IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHANNON MINNICK,** | * | |
| | * | |
| *Plaintiff,* | | |
| v. | * | Civil Case No: 1:22-cv-03084-JMC |
| **SOUTHWEST AIRLINE CO.,** | * | |
| *Defendant.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shannon Minnick, filed the present lawsuit against Defendant, Southwest Airline Co., alleging negligence (Count I) and negligent training and supervision (Count II) in the Circuit Court of Anne Arundel County on November 30, 2022. (ECF No. 2). Defendant removed the case to this Court shortly thereafter. (ECF Nos. 1, 3). Before the Court is Defendant's Renewed Motion for Partial Summary Judgment seeking judgment as a matter of law as to Count II of Plaintiff's Complaint (ECF No. 46). The Court has additionally considered the parties' oppositions and replies thereto. (ECF Nos. 47, 53). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, Defendant's motion will be granted.

### I.  BACKGROUND

    A.  Factual Background

Plaintiff is an adult resident of Maryland. (ECF No. 2 at 1).[1] Defendant is a commercial airline company based in Texas that does business in Maryland. *Id.* According to Plaintiff, she suffers from tetraplegia and was confined to a power wheelchair at all times relevant to this lawsuit. *Id.* at 3. Plaintiff is nevertheless able to feel sensations from external stimuli throughout her body despite the fact that her "condition prevent[s] her from independently moving her upper and lower extremities." *Id.*

Plaintiff alleges that she was preparing to board a flight operated by Defendant on August 19, 2019, from Baltimore to Atlanta when she informed Defendant, through its agents, servants, employees, and/or independent contractors, that she required assistance with the boarding process given her medical condition. *Id.* at 4. Plaintiff further alleges that two employees, agents, servants, and/or independent contractors of Defendant improperly transported Plaintiff to her seat on the flight while "picking her up and intending to physically transfer[] her to the assigned seat" on the aircraft. *Id.* at 5–6. The two individuals assisting Plaintiff supposedly "dropped Plaintiff" in the process, "thereby causing her body to fall and strike the arm rest abutting the aisle of her assigned seat, causing her pain and severe and significant bodily injury." *Id.* at 6. Plaintiff subsequently filed the present lawsuit, alleging negligence and negligent training and supervision.

B.      Relevant Procedural History

On November 22, 2023, Defendant filed a Motion for Partial Summary Judgment, seeking judgment as a matter of law with respect to Count II of Plaintiff's Amended Complaint. (ECF No. 32). The same day, Plaintiff filed a Motion to Extend the Scheduling Order Deadline, requesting additional time to file dispositive motions given that discovery was ongoing. (ECF No. 33). After

---

[1] When the Court cites to a particular page or range of pages, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

considering the parties' oppositions and replies, the Court issued a Memorandum and Opinion Order on February 20, 2024, addressing both motions. (ECF No. 38). Defendant's Motion for Partial Summary Judgment was denied without prejudice, permitting Defendant to file a renewed motion once all relevant discovery had been completed. *Id.* Plaintiff's Motion to Extend the Scheduling Order Deadline was granted in part and denied in part. *Id.* Specifically, the Court extended the discovery deadline to April 5, 2024, for the limited purpose of deposing Defendant's Rule 30(b)(6) corporate designee and extended the dispositive pretrial motions deadline to April 25, 2024. *Id.* The Court's April 5, 2024, order then extended the discovery deadline further to June 19, 2024, and the dispositive pretrial motions deadline to July 10, 2024. (ECF No. 43). Defendant filed its Renewed Motion for Partial Summary Judgment on July 10, 2024, which is presently pending before this Court. (ECF No. 46).

II.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.   ANALYSIS

Defendant contends that summary judgment is appropriate because, at this stage in the litigation when discovery is closed, Plaintiff cannot establish a prima facie case that Defendant negligently trained or supervised the individuals[2] who are alleged to have dropped Plaintiff. (ECF No. 46-2). Plaintiff argues that her deposition testimony describing the incident, together with the report of Plaintiff's expert witness Bonnie Hayes, sufficiently establish a genuine dispute of material fact such that Plaintiff's negligent training and supervision claims should survive summary judgment. (ECF No. 47).

Under Maryland law,[3] "[o]ne dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the

---

[2] Defendant states that "the individuals who would be transferring passengers on plane from an aisle chair to their seat, generally, are at will employees of this Defendant" but does not expressly concede that the persons in question were Defendant's employees. (ECF No. 47-4 at 4). Defendant further explains that a "Vendor Agreement is also in place for purposes of wheelchair escorts and like services." *Id.* As such, the Court will refer to the persons who transferred Plaintiff to her seat as "individuals" rather than "employees."

[3] "Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit." *Havtech, LLC v. AAON Inc.*, No. SAG-22-00453, 2022 WL 1213476, at *4 (D. Md. Apr. 25, 2022). Regarding tort claims under Maryland's choice of law rules, "the substantive tort law of the state where the wrong occurs governs." *Haunch v. Connor*, 295 Md. 120, 123 (1983). Thus, the Court will apply the substantive tort law of Maryland because the material events giving rise to the Complaint occurred in Maryland.

4

services of an unfit employee." *Evans v. Morsell*, 284 Md. 160, 166 (1978). "Where an employee is expected to come into contact with the public. . . the employer must make some reasonable inquiry before hiring or retaining the employee to ascertain his fitness, or the employer must otherwise have some basis for believing he can rely on the employee." *Id.* at 166-67. Therefore, a plaintiff bringing a negligent hiring, retention, supervision, or training claim must establish: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of the plaintiff's injuries." *Karn v. PTS of America, LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022); *see also Henley v. Prince George's Cnty.*, 60 Md. App. 24, 36 (1984), *aff'd in part*, 305 Md. 320 (1986); *Mitchell v. Rite Aid of Maryland, Inc.*, 257 Md. App. 273, 333 (2023); *Latty v. St. Joseph's Soc. Sacred Heart, Inc.*, 198 Md. App. 254, 272 (2011), *abrogated on other grounds by Plank v. Cherneski*, 469 Md. 548 (2020). Additionally, "[t]here is a rebuttable presumption that an employer has used due care in hiring the employee." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004) (citing *Evans*, 284 Md. at 165).

The crux of Defendant's summary judgment argument relates to the third element: Defendant's actual or constructive knowledge of the employees' incompetence. (ECF No. 46). Specifically, Defendant contends that, "there is absolutely no evidence of actual or constructive knowledge by Southwest of potential incompetence by its employees and agents." (ECF No. 46-2 at 6). This is due in large part to the fact that the individuals who allegedly dropped Plaintiff have

not been identified, and thus no evidence of their employment history, training, or supervision may be adduced.[4]

Plaintiff does not directly refute this argument, and instead asserts that the five elements above are not applicable to her negligent supervision and training claims.[5] Plaintiff cites *Doe v. Community of College of Baltimore County* for the proposition that "under Maryland law, the elements of a claim for negligent selection, training, supervision, or retention are functionally the same as in an ordinary claim for negligence." (ECF No. 47-1 at 8); *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 392, 418 (D. Md. 2022). Judge Rubin of this Court recently acknowledged that there is supporting case law for Plaintiff's proposed standard, which is that "'the tort of negligent selection, training, or retention, like any negligence action,' requires allegations of the four elements of negligence: '(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted from the defendant's breach.'" *Doe v. Mercy High School, Inc.*, No. 1:23-cv-01184-JRR, 2024 WL 3103396, at *21 (D. Md. June 24, 2024) (citing *Jones v. State*, 425 Md. 1, 18 (2012); *Marrick Homes LLC v. Rutkowski*, 232 Md. App. 689, 709 (2017)). Judge Rubin dismissed the *Doe v. Mercy High School* plaintiff's negligent hiring, supervision, retention, and training claims on the

---

[4] Plaintiff asserts that she is entitled to a spoliation of evidence instruction because Defendant has not been able to identify the employees in question. (ECF No. 47-1 at 7). The Court declines to make any finding on the spoliation issue, but notes that Defendant's corporate designee identified two Southwest employees likely to have knowledge of the incident in her deposition. (ECF No. 46-7 at 20-21). Defendant also provided the names of these employees in its Answers to Interrogatories, served on May 18, 2023. (ECF No. 47-4 at 6). These employees include the manager on duty that day at Baltimore Washington International Airport, and the operations agent responsible for boarding Plaintiff's flight. (ECF No. 46-7 at 20-21). Defendant's corporate designee explained that the operations agent would have customarily assisted individuals in transferring from their wheelchair to their seat. *Id.* To the Court's knowledge, it does not appear that Plaintiff took any steps to seek additional discovery regarding, or the depositions of, either of these individuals.

[5] Plaintiff further seems to argue that these elements are not applicable in the instant case because *Henley* concerns negligent hiring and retention claims, while Plaintiff alleges negligent supervision and training. (ECF No. 47-1 at 8). The Court is not aware of, and Plaintiff does not cite to, case law indicating that these actions have different elements, and in fact several cases expressly group all four causes of action together when listing the requisite elements. *Karn*, 590 F. Supp. 3d at 805; *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 392, 419 (D. Md. 2022).

basis that no employment relationship existed, and so did not reach the issue of which standard to apply. *Id.* at *22. She did, however, note that she suspected that the five element "standard articulated in *Karn* and *Mitchell* is simply a more descriptive recitation of the elements identified in *Jones* and *Marrick Homes*[.]" *Id.* at *21.

Like the *Doe v. Mercy High School* plaintiff, Plaintiff cites *Jones* and *Marrick Homes* in support of her position. (ECF No. 47-1 at 8, n.19). Plaintiff is correct that *Jones* and *Marrick Homes* set forth the standard she advocates for. *Jones*, 425 Md. at 18; *Marrick Homes*, 232 Md. App. at 709 ("[T]he elements of negligent supervision are identical to the elements of a general negligence claim."). However, the cases that *Jones* and *Marrick Homes* cite for their respective rule statements both discuss the employer's actual or constructive knowledge of their employee's past misconduct or incompetence, indicating that this is a critical piece in analyzing the sufficiency of negligent hiring, selection, training, or supervision claims.[6] The Court also notes that the Comments to the Maryland Pattern Jury Instruction on "Liability for Negligent Hiring" include both the employee's incompetence and "[t]he employer's actual or constructive knowledge of such incompetence" under "Factors to be Established[.]"  MPJI-Cv-19:4, Comment B(3).

Accordingly, this Court agrees with Judge Rubin's assessment that the five-element standard for negligent hiring, training, retention, and supervision is simply a "more descriptive recitation" of the basic elements of negligence, and will apply the five-element standard to the instant case.  In the Court's view, there is no conflict between the two standards. While the simple

---

[6] *Jones* cites to *Horridge v. St. Mary's County Department of Social Services*, which held that the plaintiff's negligent selection, training, and retention claims were properly dismissed because "there [were] no allegations that [the employees] had acted in an incompetent or unprofessional manner previously or that, if that *had* done so, [the employer] was or should have been aware of it." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004). Similarly, *Marrick Homes* cites to *Fidelity First Home Mortgage Co. v. Williams*, which concluded that a reasonable juror could find the plaintiff negligent in supervising and retaining an employee who engaged in a fraudulent foreclosure scheme, where the plaintiff was on notice that the employee "was willing to forge documents in order to close loans and earn commissions" and "was caught forging documents on three occasions[.]" *Fidelity First Home Morg. Co. v. Williams*, 208 Md. App. 180, 199 (2012).

negligence standard speaks of a "duty of care," the five-element standard simply elaborates on what that duty is in this context. Stated otherwise, there is no duty to be omniscient; the duty is to exercise case based on the facts that the employer knows or should know. This determination is consistent with previous decisions issued by this Court, which discuss the necessity of notice to an employer of their employee's potential to cause harm in establishing negligent hiring, training, retention, and supervision claims. *See Economides v. Gay*, 155 F. Supp. 2d 485, 489 (D. Md. 2001) (quoting *Gay v. United States*, 739 F. Supp. 275, 276 (D. Md. 1990)) ("[A]n employer's liability in this regard is not to be reckoned simply by the happening of an injurious event. Rather, there must be a showing that the employer failed to use reasonable care in making inquiries about the potential employee . . . or in supervising or training the employee."); *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (explaining that a plaintiff alleging negligent selection, supervision, and retention claims must demonstrate that an employer had or should have had knowledge of the employee's "conduct or general character which would have caused a prudent employer in these circumstances to have taken action.").

As previously mentioned, the Court must "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman*, 962 F. Supp. 2d at 799-800. Even viewed in the light most favorable to Plaintiff, a reasonable juror could not conclude that Defendant negligently supervised and trained the individuals who transferred Plaintiff to her seat. Plaintiff has failed to identify the individuals in question, and, even assuming they are employees of Defendant, Plaintiff has no evidence of the specific training they received, the supervision they were subject to, their employment records, or any evidence which could support a finding that Defendant possessed actual or constructive knowledge of their employee's incompetence. Further, while Plaintiff maintains that the report of her expert witness

raises a genuine issue of material fact by "specifically highlight[ing] the failures of Defendant's training and supervision of its servants, agents, employees, and/or independent contractors," it is the Court's view that the report opines on the individuals' negligence more generally, but does not address their specific training, supervision, or employment records. (ECF No. 47-1 at 9; ECF No. 47-6 at 5-7). By way of example, Plaintiff's expert states that the method purportedly used to transfer Plaintiff to her seat "is not what airlines or business partners are trained to use[,]" but does not claim that Defendant's employees are inadequately instructed on the proper transfer method, or describe past instances of the individuals in question transferring disabled persons in an unsafe manner. (ECF No. 47-6 at 5). An opinion of this nature is, of course, not possible, given that the individuals' identities remain unknown. Nor does Plaintiff's expert question the adequacy of Defendant's training policies more broadly. (ECF No. 47-6). In short, even assuming a jury were to conclude that the individuals assisting Plaintiff were negligent, there is nothing in the record to establish such negligence was the result of improper training, leaving a fact-finder to merely speculate regarding the explanation for the negligent conduct.

Viewed collectively, Plaintiff has failed to allege facts upon which a reasonable jury could conclude that Defendant possessed actual or constructive knowledge of its employees' incompetence or other conduct "which would have caused a prudent employer in these circumstances to have taken action." *Bryant*, 923 F. Supp. at 751. Further, there are insufficient facts from which a reasonable jury could conclude that any incompetence by the individuals assisting Plaintiff was due to improper training. As such, Plaintiff's claims for negligent training and supervision cannot survive summary judgment, and Defendant's Renewed Motion for Partial Summary Judgment is granted.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Partial Summary Judgment (ECF No. 46) is hereby granted.


Date: <u>September 20, 2024</u>                                   <u>        /s/         </u>
                                                                          J. Mark Coulson
                                                                          United States Magistrate Judge